# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLETTA F. UPTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-12-168-JHP-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Charletta F. Upton requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born January 5, 1968, and was forty-two years old at the time of the administrative hearing (Tr. 30-31). She obtained her GED and has past relevant work as a supervisor, warehouse clerk, and sewing room operator (Tr. 20, 31). The claimant alleges inability to work since January 10, 2009, due to rheumatoid arthritis, thyroid cancer, and high blood pressure (Tr. 151).

## Procedural History

On February 24, 2009, the claimant protectively filed for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-05 (Tr. 12). Her application was denied. ALJ Edward L. Thompson conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 21, 2011 (Tr. 9-17). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that through July 14, 2010, the claimant retained the residual functional capacity (RFC) to perform the full range of light work, 20 C.F.R. § 404.1567(b), *i. e.*, she could

lift/carry ten pounds frequently, stand/walk six hours in an eight-hour workday, and sit two hours in an eight-hour workday, and was therefore not disable, as she could return to her past relevant work (Tr. 20). The ALJ further found that from July 15, 2010, the claimant retained the RFC to perform sedentary work, 20 C.F.R. § 404.1567(a), *i. e.*, she could lift/carry five pounds frequently, stand/walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday (Tr. 20), and that although she could not return to her past relevant work, she was nevertheless not disabled according to the Medical-Vocational Guidelines, *i. e.*, "the Grids." (Tr. 20-21).

**Review**

The claimant contends that the ALJ erred by improperly relying on the Grids at step five. In support of this contention, the claimant argues that the ALJ failed to properly consider her hand pain as it relates to her ability to perform sedentary work on a regular and continuing basis. The undersigned Magistrate Judge finds that the ALJ *did* fail to properly evaluate the claimant's bilateral hand pain, and the decision of the Commissioner should therefore be reversed.

The record reveals that the claimant has received treatment for rheumatoid arthritis since 2003, and she was being treated with methotrexate (Tr. 590, 670). In March 2005, the claimant received a treatment consisting of an infusion of Remicade for her arthritis (Tr. 372), and by the end of the year, the claimant was receiving regular infusions of Remicade (Tr. 380). The treatments take approximately five hours to complete, and the claimant receives the treatment every two months (Tr. 370, 479, 757-61, 777-85, 886).

The claimant reported myalgia muscle pain in her neck, shoulders, and hands in March 2010, and arthritis pain in her right foot and hands in June 2010 (Tr. 730). In an application for a Handicapped Parking Placard dated July 15, 2010, the claimant's treating physician Dr. Favio Mota, M.D. wrote that the claimant was unable to walk 200 feet without stopping to rest in support of the issuance of a placard (Tr. 199).

The claimant was examined by state agency physician Dr. William Cooper, D.O. on April 17, 2009. The claimant reported that her medications were levothyroxine, methotrexate, hydroxychoroquine, cytomel, enalapril, remicade, and naproxen (Tr. 316). She stated that she had chronic neck pain, upper neck and low back pain, and pain in her hands, fingers, and wrists (Tr. 317). Upon examination, Dr. Cooper found that the claimant had no edema of the hands, strong and firm grip strength, and that claimant was capable of performing gross and fine manipulation (Tr. 318). Further, Dr. Cooper found that the claimant's gait was normal and heel and toe walking were also normal (Tr. 318). Range of motion testing was normal and unremarkable (Tr. 320-23).

State agency physician Dr. Carmen Bird, M.D. reviewed the claimant's records and completed a Physical Residual Functional Capacity Assessment on May 6, 2009 (Tr. 324-31). Dr. Bird found that the claimant was capable of occasionally lifting and carrying up to twenty pounds, frequently lifting and carrying up to 10 pounds, standing and/or walking for six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday (Tr. 325).

The claimant testified that she worked at Circuit City from 1993 until the business closed in March 2009 (Tr. 31-32). She stated that due to her rheumatoid arthritis, she had to move to a different position and had to take a pay cut (Tr. 35). She testified that she was only able to keep her job because Circuit City worked with her in giving her time off for doctor's appointments (Tr. 36-37). She stated that it takes her about three days to fully recover from the Remicade infusions (Tr. 40). She related that she has arthritis-related pain in her shoulder, neck, hips, and feet (Tr. 46-47). Further, the claimant testified that she spends most of her time either in bed or on the couch (Tr. 48). She stated that she can no longer peel potatoes or mix a cake because her hands and wrists cramp, and she also has problems with small buttons and zippers (Tr. 49-50). She also stated that she has problems with her hair (Tr. 53).

"The grids" are rules promulgated by the Commissioner for determining disability based on a claimant's RFC category, age, education and work experience. *See Channel v. Heckler,* 747 F.2d 577, 579-80 & n.3 (10th Cir. 1984) (per curiam). "An ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level. Each of these findings must be supported by substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Thus, use of the grids is inappropriate when a claimant has a nonexertional impairment, unless the ALJ can support a finding that the nonexertional impairment is insignificant. *Id.* at 1490-91; 20

C.F.R., pt. 404, subpt. P, app.2, § 200.00(e). If an ALJ cannot rely conclusively on "the grids," he "must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual lives or in several regions of the country." Soc. Sec. Rul. 96-9p, 1996 WL 374185 at *5.

The claimant contends that the ALJ erred in applying "the grids" to determine she was disabled because her severe impairment of rheumatoid arthritis caused a significant nonexertional impairment, *i. e.*, bilateral hand pain. "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson*, 987 F.2d at 1488, *citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). Additionally, "[c]areful consideration must be given to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996); Soc. Sec. Rul. 96-8p (July 2, 1996).

In this case, the ALJ found that the claimant had a pain-causing severe impairment (rheumatoid arthritis) and was therefore required to consider the claimant's assertions of pain and the extent to which they were disabling. *See Winfrey v. Chater*, 92 F.3d 1017, 1020 (10th Cir. 1996); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The ALJ did not, however, determine that the claimant's bilateral hand pain was insignificant or make any specific findings as to the extent to which such pain limited the claimant's ability to perform any work-related activities; the ALJ simply noted in conclusory fashion that the "claimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (Tr. 17). Not only is such boilerplate language deficient analysis of the claimant's pain, *see, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) ("The ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects from her pain medication."), but it also suggests that the ALJ first determined the claimant's RFC, then measured the credibility of her testimony about the limiting effects of her pain against the RFC, rather than first determining her credibility, then formulating an appropriate RFC taking such credibility into account. *See, e. g., McFerran v. Astrue,* 2011 WL 3648222, *2-*3 (10th Cir. Aug. 19, 2011) ("The ALJ's ultimate credibility determination is a singularly unhelpful

sentence: '[T]he claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment.' . . . The ALJ's errors in the credibility assessment necessarily affect the RFC determination."), [unpublished opinion], *quoting Poppa v. Astrue,* 569 F.3d 1167, 1169 (10th Cir. 2009).

The Commissioner contends, *inter alia*, that "the ALJ's limitation of Plaintiff to sedentary work was generous because despite a history of rheumatoid arthritis, physical examinations in April 2009 and May 2009 showed that Plaintiff was able to perform both gross and fine tactile manipulations; had a tandem gait within normal limits; had normal heel-to-toe walking; and had a full range of motion in her wrists and fingers" [Docket No. 17], p. 5. It is not entirely clear, but the Commissioner seems to be suggesting that the ALJ accounted for the limiting effects of the claimant's bilateral hand pain by down-grading her from light to sedentary work. If so, then the ALJ should undoubtedly have noted this explicitly; this Court is in no position to adopt this rationale on behalf of the ALJ. *See, e. g., Haga v. Astrue,* 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."). But it is doubtful in any event that such an explanation would suffice to allow conclusive application of the grids in this case. The ALJ specifically found that from July 15, 2010, "the claimant's condition changed when she . . . developed arthritic pain in her right foot and bilateral hands" (Tr. 17), but did not either account for the claimant's change in condition by including limitations related to

her bilateral hand pain in her RFC, or explain why such pain was insignificant. Thus, the question remains what sedentary work the claimant can perform with her bilateral hand pain, and the ALJ erred in finding she was not disabled based upon the grids. *See Allen v. Barnhart*, 357 F.3d 1140, 1143 (10th Cir. 2004) (recognizing that conclusive reliance on the grids is erroneous if the ALJ failed to make findings regarding nonexertional impairments), *citing Channel v. Heckler*, 747 F.2d 577, 581-82 (10th Cir. 1984).

Because the ALJ failed to properly account for the claimant's bilateral hand pain before finding her not disabled according to the grids, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 13th day of September, 2013.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma